## UNITED STATES v. ONE FORD COUPE, 1940 MODEL.

### Civ. No. 456.

United States District Court,
W. D. Virginia, Roanoke.
March 27, 1950.

Howard C. Gilmer, Jr., United States Attorney, and R. Roy Rush, Assistant United States Attorney, Roanoke, Va., for libellant.

C. Carter Lee, of Rocky Mount, Va., for claimant.

BARKSDALE, District Judge.

This action, by agreement, on February 27, 1950, having been tried upon the facts by the court without a jury, the court doth hereby find the facts and state separately its conclusions of law, as follows:

## Findings of Fact.

On July 7, 1947, Otis Mason Martin, upon his plea of guilty to an indictment theretofore returned against him, was placed on probation for a period of three years upon the usual terms and conditions. During his probation, he has resided at Roanoke, Virginia, and has been directly under the supervision of United States Probation Officer Willard M. Fansler. For a considerable time prior to January 19, 1950, Officer Fansler had been receiving and obtaining information which gave him good reason to believe that Otis Martin was violating the terms of his probation by engaging in violations of the criminal laws of the United States with regard to liquor upon which the tax had not been paid. Officer Fansler also had information which led him to believe that one Cauley was engaged in the illicit traffic with Otis Martin. About 9:30 P. M., on January 19, 1950, Officer Fansler went to the home of Otis Martin at Roanoke, and, without going on the premises, saw Otis Martin's 1950 Model Ford automobile and another automobile which he recognized as belonging to Cauley. He did not see the 1940 Ford Coupe of Otis Martin (which is the vehicle here in controversy), so Officer Fansler assumed from information he had previously acquired that Otis Martin and Cauley were hauling whiskey that night. Officer Fansler left and returned to the vicinity of Otis Martin's home about 11:00 or 11:30 P. M., and found the conditions to be the same. Officer Fansler took a position about forty yards from and across the street from Otis Martin's house, and stayed there until about 5:45 the morning of January 20, 1950. At that time, he heard an automobile approaching at a rather high rate of speed, and as it drove into the premises of Otis Martin, Officer Fansler recognized it as Otis Martin's 1940 Ford Coupe. When the Ford Coupe drove into Otis Martin's driveway, Officer Fansler moved closer and concealed himself, but remained across the street from Otis Martin's premises. He observed Otis Martin's 1940 Ford Coupe stop in his driveway, and Cauley got out of the car. Cauley proceeded to drive Otis Martin's 1950 Ford out of the driveway, and while he was so doing, Officer Fansler observed that the 1940 Ford, which had just arrived, was equipped with heavy over-load springs, which are customarily used in the hauling of liquor. Officer Fansler also observed that the automobile was carrying a heavy load. Otis Martin's 1940 Ford Coupe was then turned and backed into his garage, and the lights extinguished. By the light of flash lights, which both men were using, Officer Fansler saw Cauley go to the rear of the 1940 Ford and saw Otis Martin get out of the driver's seat. Then the garage door was closed. Officer Fansler knew that in the garage there was a trap door covering a trap in which liquor could be concealed. Shortly after the closing of the garage door, Officer Fansler heard a noise which he took to be the opening of the trap door. He then heard the screeching of the automobile springs as though weight were being lifted from the car, and he heard the noise of objects being slid across the floor. From information previously received, from the fact that Otis Martin had been out all night, from his observation of the 1940 Ford Coupe upon its arrival at 5:45 A. M., and from the sounds he heard in the garage, Officer Fansler was satisfied that Probationer Otis Martin was engaged in a violation of law which was a violation of the terms of his probation. He therefore crossed the street onto the premises of Otis Martin,

424

walked up to the front of the garage, and stood there for two or three minutes listening. He heard Otis Martin say that someone should have come and picked up the stuff. Officer Fansler then opened the garage door and turned his flashlight into the garage. He saw Otis Martin sitting in the rear compartment of the 1940 Ford Coupe and Cauley carrying a case of whiskey downstairs into the trap. Turning his flashlight into the car, Officer Fansler saw seven or more cases of whiskey in the car, several cases on the floor, and several cases already placed in the trap. There were twenty-six cases of illicit whiskey altogether. Thereupon, Officer Fansler seized the 1940 Ford Coupe which is here in controversy. Officer Fansler had not obtained a search warrant. At the time of this seizure, Otis Martin was on probation to this court, and Officer Fansler was charged with his supervision.

#### Conclusions of Law.

I deem it unnecessary to give any consideration to, or state any conclusion of law as to, the legality of Officer Fansler's search and seizure, had Otis Martin not been on probation. Inasmuch as Otis Martin was on probation and Officer Fansler was specifically charged with his supervision, I conclude as a matter of law that, under the circumstances set out in my findings of fact, Officer Fansler, in the discharge of his duty of supervising Probationer Otis Martin, was not required to first obtain a search warrant before entering the premises of Otis Martin and searching his garage. I therefore conclude that the motion of claimant; Otis Martin, to suppress the evidence of Officer Fansler, must be overruled.

Having found as a fact that the automobile here in controversy was being used for the transportation of liquor upon which the tax had not been paid, in violation of the Internal Revenue Laws of the United States, I conclude that forfeiture of the said automobile should be decreed. It will be so ordered.